## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KAY LACKEY | CASE NO.: |
|                Plaintiff, | |
|      v. | **VERIFIED COMPLAINT** |
| MEDINA COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, INC., TRACY MILLER, in her official and individual capacity, RACHEL BATTEN, in her official and individual capacity, KARLIE MILLER, in her individual capacity, and DOES 1-10, in his or her official and individual capacity. | **[JURY DEMAND ENDORSED HEREON]** |
|             Defendants. | |

COMES NOW, Plaintiff Kay Lackey hereby files her Verified Complaint against

Defendants Medina County Society for Prevention Against Cruelty to Animals, Inc., Tracy

Miler, in her official and individual capacity, Rachel Batten, in her official and individual

capacity, Karlie Miller, in her individual capacity, and Does 1-10, in their official and individual

capacities, and respectfully allege as follows,

### JURISDICTION AND VENUE

1.       This Court has subject matter jurisdiction over Plaintiff's claims pursuant to Title I of the

American with Disabilities Act ("ADA"), the Fair Housing Amendments Act of 1988 ("FHA"),

42 U.S.C. § 1983, federal question jurisdiction under 28 U.S.C. § 1331, and civil rights

jurisdiction under 28 U.S.C. § 1343, and over Plaintiff's claims under Ohio state law pursuant to

28 U.S.C. § 1367 (supplemental jurisdiction) because Plaintiffs' claims arise out of the same

nucleus of operative fact and form part of the same case or controversy as Plaintiff's federal claims.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the parties are residents of this judicial district and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

3.      Plaintiff Kay Lackey is an individual and resident of the County of Medina, Ohio.

4.      Defendant Medina County Society for the Prevention of Cruelty to Animals ("Medina SPCA") is a 26 U.S.C. § 501(c)(3) non-profit organization, located in Medina County at 8790 Guilford Rd., Seville, OH 44273.  Defendant Medina SPCA is an Ohio Revised Code Section 1717.05 Humane Society.

5.      Defendant Tracy Miller is one of Defendant Medina SPCA's "Full-Time Staff Leaders". Her title is "Manager of Internal Operations."  Defendant Miller is the mother of Defendant Karlie Miller.  Defendant Tracy Miller is being sued in both her individual and official capacities.

6.      Defendant Rachel Batten ("Defendant Humane Agent") is one of Defendant Medina SPCA's "Full-Time Staff Leaders".  She is an R.C. 1717.06 Humane Agent, with police powers conferred by Ohio Revised Code Sections 1717.06 and 1717.08.  She is being sued in both her individual and official capacities.

7.      Defendant Karlie Miller is the daughter of Defendant Tracy Miller, and is employed by Defendant Medina SPCA.  She is being sued in her individual capacity.

8.      Defendants Does 1-10 are unknown persons who are being sued in both their individual and official capacities.

## FACTS

**I.      Defendant Rachel Batten enters Plaintiff's property on December 20, 2022:**

4.      On December 20, 2022, Defendant Medina SPCA's Humane Agent Defendant Rachel Batten ("Defendant Humane Agent"), arrived at Plaintiff's property in Medina County, Ohio.

5.      Plaintiff and Defendant Humane Agent conducted a conversation outside of Plaintiff's house.

6.      Defendant Humane Agent told Plaintiff that she stopped by to see if Plaintiff would be willing to train[1] an eight month old pit bull that was at Defendant Medina SPCA's facility.

7.      Plaintiff responded that she would drop by the Medina SPCA to evaluate the dog to determine if he was a candidate for training.

8.      Defendant Humane Agent then asked Plaintiff is she could see the area where the Medina SPCA's dog would be kept.

9.      Plaintiff told her "no."

**II.     Entry onto property by Defendant Humane Agent on January 27, 2023**

10.     On January 27, 2023, at approximately 12:00 p.m., Defendant Humane Agent again appeared at Plaintiff's home.

11.     According to Defendant Humane Agent she was there to inquire about a complaint she had received over the summer of 2022.

---

[1] Plaintiff is a dog trainer by profession.

12.    This conversation between Plaintiff and Defendant Humane Agent occurred again, outside of Plaintiff's home.

13.    Defendant Humane Agent again asked to see the inside of Plaintiff's house.

14.    Plaintiff again responded "no."

15.    Defendant Humane Agent then left Plaintiff's property.

16.    That afternoon, Plaintiff received a telephone call from Defendant Humane Agent.

17.    Defendant Humane Agent in this telephone call, asked Plaintiff if she was home and informed Plaintiff she was coming to her home to serve a search warrant.

18.    Defendant Humane Agent arrived at approximately 5:30 p.m., along with Defendant Karlie Miller.

19.    Defendant Humane Agent handed Plaintiff the search warrant. (Ex. A)

20.    Defendant Humane Agent and Karlie Miller entered Plaintiff's home, and began taking pictures of her house and the animals inside the house – dogs and cats.

21.    After taking pictures and video of the inside of Plaintiff's home, Defendant Humane Agent and Defendant Miller went through Plaintiff's training barn.

22.    After Defendant Humane Agent and Defendant Miller were done, Defendant Humane Agent told Plaintiff that she was going to remove from the property all of her animals.

23.    Plaintiff begged her not to take her animals.

24.    Plaintiff informed Defendant Humane Agent that Shawnee was her retired senior service animal, and that Zuni and Rajah were her service animals.

25.    Defendant Humane Agent at this point went away from Plaintiff to speak with Defendant Miller in private.

26.     Upon returning from that conversation, Defendant Humane Agent told Plaintiff that she could have overnight to clean up her house, and try to change her mind about taking the animals.

27.     Defendant Humane Agent said she would return at 10:00 a.m. the next day, and warned Plaintiff that all of the animals had better still be present when she returns the next morning.

**III.     Defendant Humane Agent's warrantless non-consensual search and seizure - January 28, 2023**

28.     At approximately 10:00 a.m. on Saturday, January 28, 2023, Defendant Humane Agent arrived at Plaintiff's property, entered Plaintiff's home, and again took pictures of the house and animals.

29.     During Defendant Humane Agent's time in Plaintiff's house, she was also taking notes on a piece of paper, and told Plaintiff that she was not permitted to use "Ruffland Crates" to house her dogs anymore.

30.     After Defendant Humane Agent was done taking pictures of the home and the animals therein, she told Plaintiff that she needed to surrender some of her dogs and all of her cats, because she had too many animals in the home.

31.     When Plaintiff protested that she did not want to give her any of her animals, Defendant Humane Agent responded that the choice was she could take all of the animals, or if Plaintiff agreed sign a surrender form, she would only take some of the animals.  Defendant Humane Agent also told Plaintiff that if she did not surrender some of the animals, she would be criminally charged with animal cruelty.

32.     Defendant Humane Agent told Plaintiff which dogs she was picking to take based upon their adoptability, and Defendant Humane Agent selected Plaintiff's two service dogs, Rajah (2

years old) and Zuni (2 years old), Athena (7 years old), and Titan (4 years old), and four cats, Molly (19.5 years old), Izod (14 years old), Stone (12 years old) and Yuki (2 years old).

33.     Plaintiff immediately again informed her that Zuni and Rajah are her service dogs, and that she could not be without them.

34.     Defendant Humane Agent ignored Plaintiff's pleas, and proceeded to gather the four dogs, which included Plaintiff's two service animals, Zuni and Rajah.

35.     At this point, Defendant Humane Agent went to the front door and opened it, and other people who are unknown to Plaintiff, entered the home and took the four dogs and cats out of the house.

36.     Defendant Humane Agent told those unidentified persons to transport the animals to the Medina SPCA, and wait for her to arrive.

37.     After the animals had been removed from Plaintiff's property by the other people assisting Defendant Humane Agent, Defendant Humane Agent pulled out a surrender form and told Plaintiff she had to sign the document and release the animals to Medina SPCA, or else she would take the remaining dogs as well, including her elderly service dog, and would file criminal charges against Plaintiff if she did not surrender the animals that were enroute to Medina SPCA.

38.     Plaintiff signed the surrender form with eight (8) animals listed on the form, but was not provided with a copy of it.

39.     In addition to the seizure of Plaintiff's two service animals, Rajah and Zuni, Defendants also seized on January 28, 2023 the following dogs and cats,

> a. A dog named Athena, who is a seven (7) year old Doberman Pinscher.  Plaintiff has owned Athena for six and a half years.
> b. A dog named Titan, who is a four (4) year old American Bully.  Plaintiff has owned him for a year.
> c. A cat named Izod, who is fifteen (15) years old.  Plaintiff has owned him for fourteen years.

    d.    A cat named Molly, who is nineteen and a half years old.  Plaintiff has owned him for nineteen years.

    e.    A cat named Stone, who is twelve (12) years old.  Plaintiff has owned him for twelve years.

    f.    A cat named Yuki, who is two (2) years old.  Plaintiff has owned him for two years.

40.    Defendant Humane Agent also demanded all the veterinarian records for the dogs she seized, and Plaintiff complied with her order to hand them over.

41.    Defendant Humane Agent told Plaintiff that she had to move all of the remaining dogs into the Barn, and Plaintiff responded that it was going to get very cold, and there was no heat in the barn.

42.    Defendant Humane Agent responded that Plaintiff must purchase space heaters for each dog.

43.    Defendant Humane Agent told Plaintiff that she would be back on Tuesday, January 31, 2023 to again check on the condition of the house and the set-up of the dogs in the training barn – she called it a "welfare check."

44.    The Humane Agent left at approximately 12:30 p.m.

45.    Plaintiff thereafter, on Monday, January 30, 2023 contacted Defendant Humane Agent about the Tuesday inspection, and asked the Humane Agent if she was required to allow Defendant Humane Agent to inspect her house and property.

46.    Defendant Humane Agent responded "yes"  "if you do not I will go get a search warrant."

47.    Defendant Humane Agent was displeased to hear from Plaintiff that Plaintiff did not move her dogs to the barn as the Humane Agent had ordered her to do, and Defendant Humane Agent told Plaintiff that she needed to verify everything for herself, and chastised Plaintiff for not following what she had already asked her to do.

48.     Plaintiff in this conversation, demanded the immediate return of her two service dogs.

49.     Defendant Humane Agent responded that Plaintiff did not inform her that these dogs were service dogs at the time of the seizure, and also stated "I have given you more than enough empathy even giving you permission to keep the five dogs you did.  You will not be getting these dogs back."

50.     Defendant Humane Agent also told Plaintiff that she already has one service dog, and that she does not need the other two.

51.     On January 30, 2023, subsequent to the seizure, Defendant Medina SPCA gave one of the cat's seized (Stone) to Plaintiff's mom, who is a retired veterinarian.

## IV.     Tuesday, January 31, 2023 "Welfare Check"

52.     On Tuesday, January 31, 2023, Defendant Humane Agent, arrived at Plaintiff's property.

53.     Plaintiff, along with a couple of her friends, met Defendant Humane Agent outside of the house.

54.     Defendant Humane Agent handed Plaintiff an Evidence Receipt with a date of January 28, 2023. (Ex. B).

55.     Defendant Humane Agent did not give Plaintiff a copy of the surrender form signed on January 28, 2023.

56.     Discussion ensued, and Defendant Humane Agent informed Plaintiff that if she did not grant access to her home, she would get a search warrant and would file criminal charges.

57.     Plaintiff, along with support from her friends, told Defendant Humane Agent that she needed a warrant before coming into the house.

58.     At this point, Defendant Humane Agent pulled out a piece of paper for Plaintiff to sign, and after being told that she would not sign anything else, the sheet of paper was pulled away by Defendant Humane Agent.

59.     Plaintiff does not know what was on that sheet of paper.

60.     Defendant Humane Agent left the property without entering Plaintiff's home.

61.     As far as Plaintiff knows, Defendants have not been to Plaintiff's property since Tuesday, January 31, 2023,

62.     No criminal charges have been filed against Plaintiff.

63.     Plaintiff has not been provided a copy of the Search Warrant Affidavit.

64.     On February 6, 2023 the Humane Agent told Plaintiff's mother that they would not give the other cats to her mom because Plaintiff was not cooperating with welfare checks.

**V.     Defendant Medina SPCA is disposing of the animals it seized**

65.     The Medina SPCA has adopted out, or has advertised for adoption, the animals seized from Plaintiff.

66.     Athena, who is one of the dogs seized, was, but no longer is being, advertised for adoption, so it is presumed Athena has been adopted by a third-party, and thus Defendant Medina SPCA has removed the adoption advertisement.

67.     The picture of Athena that was on the adoption page, shows that she had lost weight while incarcerated at Defendant Medina SPCA's facility.

68.     Currently, Titan, one of the other dogs seized is being advertised for adoption.

69.     The picture of Titan on the adoption page shows that he has lost weight while incarcerated at Defendant Medina SPCA's facility.

70.     The cats seized are either already adopted out or are being advertised for adoption.

71.     The adoption pictures of Athena and Titan show they have lost weight while at Medina SPCA.

72.     The dogs seized and that are located at Medina SPCA are not receiving wholesome air and exercise, and are experiencing shelter trauma.

**VI.     Plaintiff has a qualifying disability**

73.     Plaintiff was diagnosed with Generalized Epilepsy in 1996.

74.     Plaintiff suffers from epileptic seizures which are triggered by anxiety.

75.     Plaintiff's epileptic seizures are triggered by anxiety and stress.

76.     Plaintiff's physical and mental impairments substantially limit one or more of her major life activities.  Accordingly, Plaintiff has a "handicap" pursuant to 43 U.S.C. § 3602(h), FHA.

77.     In order to have equal use and enjoyment of her home, as well as to help alleviate the effects of her chronic disabilities, it is imperative that Plaintiff has the ability to live with her two service animals, Rajah and Zuni, which alleviate one or more of the identified symptoms of Plaintiff's disabilities.

78.     On February 6, 2023 Plaintiff requested from Defendants, a reasonable accommodation under the ADA, FHA, and Rehabilitation Act of 1973.  (Ex. C)

79.     The reasonable accommodation requested was for the immediate return of Plaintiff's two service dogs, Rajah and Zuni.  (Ex. C).

80.     Plaintiff provided Defendants reliable verification of her disabilities and disability-related need for the accommodation, which has been rejected by Defendants.

81.     Defendants' response was that Plaintiff voluntarily surrendered her two service dogs.

**VII.     Plaintiff's Service Animals**

10

82.   Plaintiff owns two Service Animals named Rajah and Zuni.

83.   Plaintiff has owned Rajah and Zuni since they were nine (9) weeks old.

84.   Rajah and Zuni are currently two-years old.

85.   Rajah and Zuni are Czech German Shepherds.

86.   Plaintiff's Service Animals are individually trained to do work or perform tasks for the benefit of Plaintiff, who is an individual with a disability.

87.   Rajah and Zuni are specifically trained in the area of Seizure Alert.

88.   Rajah and Zuni enable Plaintiff to go out into public and to function in daily life.

89.   Plaintiff has been unable to go out into the public since her service animals have been seized by Defendants.

90.   Rajah and Zuni's training is based on body language versus verbal commands, and any verbal commands they know are in German (this prevents strangers from taking control of my Service Animals.

91.   Rajah and Zuni are considered working animals that have extremely high energy and are very intelligent requiring a lot (more than triple that of a basic pet dog) of mental and physical stimulation on a daily basis.

92.   Plaintiff's service animals are not receiving adequate care and nurturing at Defendant Medina SPCA's facility.

93.   Rajah has injured her foot in Defendant Medina SPCA's facility  - due to not being exercised, and experiencing cage fever.


**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**

**Fourth Amendment**
**Unreasonable Search**

94.     Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury

Demand as if fully set forth herein.

95.     On January 28, 2023 and thereafter, Defendant Humane Agent's actions of invading her

home without a warrant, and without consent or exigent circumstances, were taken under color

of law, violating clearly established rights, of which a reasonable person would have been aware

at the time those actions of omission and commission were taken by them.

96.     Plaintiff had a reasonable expectation of privacy that her home would be safe from

unreasonable and illegal searches.

97.     Defendant Humane Agent possessed no search warrant when she searched Plaintiff's

property on January 28, 2023.

98.     Plaintiff did not consent or extend permission to the Defendants to enter her home on

January 28, 2023.

99.     There were no exigent circumstances that would justify Defendant Humane Agent's

search of Plaintiff's home on January 28, 2023.

100.    Every person has a reasonable expectation of privacy in his or her home.

101.    Defendant Humane Agent's entering of Plaintiff's home on January 28, 2023, without

Plaintiff's permission and consent, constituted an illegal and unreasonable search of Plaintiff's

property in violation of the Fourth Amendment to the United States Constitution.

102.    Defendant Humane Agent's taking of photographs of the contents of Plaintiff's home on

January 28, 2023 without Plaintiff's permission and consent violated her expectation of privacy

in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

103.    As a result of Defendant Humane Agent's violations of Plaintiff's constitutional rights against illegal searches and expectation of privacy, Plaintiff and her property were damaged.

104.    Having deliberately violated the Plaintiffs' constitutionally protected rights, and concomitantly having caused the Plaintiff to sustain damages as a result thereof, Defendants are liable to the Plaintiff, and the Plaintiff is entitled to recover the amount of damages sustained, declaratory, and injunctive relief, the costs of bringing this suit and reasonable attorneys' fees against Defendants pursuant to 28 U.S.C. Sections 2201 and 2202, and 42 U.S.C. Section 1983.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
### Fourth Amendment
### Unreasonable Seizure

105.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

106.    At all material times herein, Defendant Humane Agent's actions were taken under color of law, violating clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by them.

107.    On January 28, 2023, Defendants unlawfully and unconstitutionally seized Plaintiff's personalty, in violation of the Fourth Amendment to the United States Constitution.

108.    On January 28, 2023, Defendant Humane Agent entered Plaintiff's home without consent, without a search warrant that authorized entry and seizure of property, and without exigent circumstances.

109.    A warrantless search is presumed unreasonable.

110.    For Fourth Amendment purposes, dogs and cats are considered effects and therefore entitled to protection.

13

111.    At the time of the challenged conduct in the present case, the contours of the right to be free from unreasonable seizures were sufficiently clear — warrantless seizure of private property while on private property violates that right, unless a specific exception to the warrant requirement applies.

112.    The contours of the Fourth Amendment right to be free from unreasonable seizures are not dependent on local law enforcement practices or the law of the particular State in which the seizure occurs.

113.    Defendants had no consent to seize Plaintiff's property on January 28, 2023.

114.    Defendant had no warrant authorizing seizure of Plaintiff's property on January 28, 2023.

115.    Defendant Humane Agent told Plaintiff she could either sign the surrender form for four dogs and four cats, or she would take all of the animals in the house, and criminally charge Plaintiff.

116.    Plaintiff signed the surrender form based upon duress and coercion.

117.    Plaintiff's signature of the surrender form was not freely or voluntarily given.

118.    Plaintiff did not voluntarily surrender her two Service Animals, two dogs, and four cats - to Defendants.

119.    Defendant Humane Agent acted with such a show of authority that Plaintiff reasonably believed that she had no choice but to comply.

120.    Any purported consent was involuntary, equivocal, not-specific, not intelligently given, and contaminated by duress or coercion, and against public policy.

121.    It is notable that R.C. 1717.18 (titled "Nonprosecution Agreements") bars a humane society from entering into an agreement not to prosecute, and makes any such agreement void and unenforceable.  R.C. 1717.18(A)&(B).  By telling Plaintiff that if she did not surrender the

animals she would not be prosecuted, could lead a person to believe that if they did surrender the animals they would not be prosecuted. Even an oral promise to not prosecute should be scrutinized as being against public policy.

122. Upon Defendants taking possession of the dogs, she was told she would not get her animals back because she signed the surrender of the animals.

123. Defendants also seized Plaintiff's vet record on January 28, 2023.

124. Plaintiff has been deprived of her property, and of being able to provide the animals seized her choice of care, food, medical attention, exercise and other indicia of ownership to her animals.

125. Defendants' seizure of Plaintiff's animals on January 28, 2023 based upon a surrender which was not voluntary nor freely given, constituted an illegal and per se unreasonable seizure of Plaintiff's property in violation of the Fourth Amendment to the United States Constitution.

126. The seizure of plaintiffs' dogs is unreasonable because there exists no explicit statutory authority to hold the dog when Defendants failed to provide an opportunity for a pre-seizure or post-seizure hearing.

127. The seizure is unreasonable because there are no rules, guidelines, procedures, policies, regulations or uniform standards concerning when it is permissible to retain Plaintiff's animals.

128. The seizure is unreasonable because of the absence of any rules, guidelines, procedures, policies, regulations or uniform standards to limit the unfettered discretion of the individual Defendants, and the lack of any review process or means to challenge the propriety of the seizure and retention of Plaintiff's animals.

129. By seizing Plaintiff's animals and retaining possession of such dogs indefinitely, and without providing plaintiffs with the necessary due process, including an opportunity to contest

the validity of the seizure and retention, Defendants violated Plaintiff's rights under the Fourth

Amendment to the U.S. Constitution

130.    Defendants' impoundment and retention scheme is unconstitutional because it permits

seizures and impoundments of property, while at the same time vesting ultimate discretion and

authority in the Defendants to seize plaintiffs' property, with no rules or procedures that must be

followed.

131.    Defendants' actions were deliberate, reckless and indifferent to Plaintiff's constitutional

rights. Plaintiff has suffered, and/or is currently suffering, immediate and irreparable harm due to

the actions of Defendants, and will continue to suffer such harm.

132.    Having deliberately violated the Plaintiff's constitutionally protected rights, and

concomitantly having caused the Plaintiff to sustain damages as a result thereof, Defendants are

liable to the Plaintiff, and the Plaintiff is entitled to recover the amount of damages sustained,

declaratory, and injunctive relief, the costs of bringing this suit and reasonable attorneys' fees

against Defendants pursuant to 28 U.S.C. Sections 2201 and 2202, and 42 U.S.C. Section 1983.


**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Failure to provide Pre-Seizure/Pre-Deprivation Hearings**

133.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury

Demand as if fully set forth herein.

134.    At all material times herein, Defendants' actions were taken under color of law, violating

clearly established rights, of which a reasonable person would have been aware at the time those

actions of omission and commission were taken by them.

16

135.    Due process requires Defendants to provide an opportunity for some kind of hearing prior to the deprivation of her property interests.

136.    As a protected property interest, Plaintiff's interest in her animals was protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

137.    Plaintiff's ownership of her animals is a recognized protected property interest protected under the Constitution.

138.    Defendants did not have a valid governmental interest that would have justified the failure to hold a pre-seizure hearing.

139.    Defendants had time to ensure that Plaintiff had the opportunity to have a pre-deprivation hearing on the animals seized from her property on January 28, 2023.

140.    Defendants have no extraordinary situation where some valid governmental interest existed to justify the failure to provide a hearing prior to seizing and subsequently disposing of the animals seized.

141.    Defendants continued their deprivation of Plaintiff's interest in her property when they adopted out, killed, or otherwise disposed of her animals subsequent to the initial illegal seizure on January 28, 2023.

142.    As to both the initial seizure of the animals, and the subsequent disposition of them by Defendants, a pre-seizure/pre-deprivation hearing was feasible.

143.    Having deliberately violated the Plaintiff's constitutionally protected rights, and concomitantly having caused the Plaintiff to sustain damages as a result thereof, Defendants are liable to the Plaintiff, and the Plaintiff is entitled to recover the amount of damages sustained, declaratory, and injunctive relief, the costs of bringing this suit and reasonable attorneys' fees against Defendants pursuant to 28 U.S.C. Sections 2201 and 2202, and 42 U.S.C. Section 1983.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Failed to provide a Post-Seizure Hearing**

144.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury

Demand as if fully set forth herein.

145.    At all material times herein, Defendants' actions were taken under color of law, violating

clearly established rights, of which a reasonable person would have been aware at the time those

actions of omission and commission were taken by them.

146.    Plaintiff's ownership of her animals is a recognized protected property interest protected

under the Constitution.

147.    As a protected property interest, Plaintiff's interest in her animals was protected by the

Due Process Clause of the Fourteenth Amendment to the United States Constitution.

148.    Due process requires Defendants to provide an opportunity for some kind of hearing prior

to the deprivation of her property interests.

149.    It also requires, however, when it is not feasible to hold a pre-seizure hearing, that a

prompt post-seizure hearing is provided to Plaintiff.

150.    Defendants have failed to provide notice to Plaintiff of her rights to a seizure hearing.

151.    Defendants have failed to provide any process by which Plaintiff can contest the seizure.

152.    As a result, the seizure and impoundment of Plaintiff's animals on January 28, 2023,

Defendants deprived her of a protected property interest without procedural due process.

153.    Having deliberately violated the Plaintiff's constitutionally protected rights, and

concomitantly having caused the Plaintiff to sustain damages as a result thereof, Defendants are

liable to the Plaintiff, and the Plaintiff is entitled to recover the amount of damages sustained,

declaratory, and injunctive relief, the costs of bringing this suit and reasonable attorneys' fees

against Defendants pursuant to 28 U.S.C. Sections 2201 and 2202, and 42 U.S.C. Section 1983.

## FIFTH CAUSE OF ACTION
### Violations of the Fair Housing Act
### Failure to Accommodate

154.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury

Demand as if fully set forth herein.

155.    Defendant is disabled, and has a qualifying disability under the FHA and ADA.

156.    Defendant's Service Animals, Rajah and Zuni, are protected under the FHA and ADA.

157.    Plaintiff submitted to Defendant Medina SPCA, a request for a reasonable

accommodation, that being return of her Service Animals, Rajah and Zuni.

158.    Defendants have refused to provide this reasonable accommodation.

159.    The failure to accommodate Plaintiff, constitutes discrimination against a person in

violation of the FHA - 42 U.S.C. § 3604(f)(2), (f)(3)(b) - by discriminating on the basis of

handicap in connection with such dwelling.

160.    Defendants have deprived Plaintiff of the full enjoyment of the rights granted by the Fair

Housing Act, 42 U.S.C. §§ 3601 *et seq.* in violation of § 3614(a).

161.    Defendants have denied to a group of persons rights granted by the Fair Housing Act, 42

U.S.C. §§ 3601 *et seq.*, which denial raises an issue of general public importance, in violation of

42 U.S.C. §3614(a).

162.    A reasonable accommodation under the Fair Housing Act may include the use of a

Service Animal in one's own home, despite the existence of a rule, policy or law prohibiting such

an animal.

19

163.    Defendants have violated the Fair Housing Act because they have denied Plaintiff

reasonable accommodation based upon her disability.

164.    Defendants, through their conduct and acts described, violated 42 U.S.C. § 3604(f), by

refusing to make reasonable accommodation in its rules, policies, practices, or services, when

such accommodations are necessary to afford Plaintiff, an equal opportunity to use and enjoy

their dwellings.

165.    Defendants refused to make reasonable accommodations in the rules, policies, practices,

or services, when such accommodations may be necessary to afford equal opportunity to use and

enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

166.    Defendants have refused to return the Service Animals despite multiple requests.

167.    Defendant has failed to make a "reasonable accommodation" under Section 3604 of the

FHA. *See* 42 U.S.C. § 3604(f)(3)(B).

168.    Neither Ohio law, nor Defendant Medina SPCA's policies, practices, or customs, trump

the FHA.

169.    When applied to Service Animals, any law that contradicts the FHA has been preempted

and is unenforceable.

170.    Section 3615 of the FHA provides:

>    Nothing in this subchapter shall be construed to invalidate or limit
>    any law of a State or political subdivision of a State, or of any other
>    jurisdiction in which this subchapter shall be effective, that grants,
>    guarantees, or protects the same rights as are granted by this
>    subchapter; but any law of a state, a political subdivision, or other
>    such jurisdiction that purports to require or permit any action that
>    would be a discriminatory housing practice under this subchapter
>    shall to that extent be invalid.

171.    Any law, policy, practice, procedure, or custom invoked by Defendants to justify its

failure to accommodate and return the Service Animals is void as a matter of law as to reasonable

accommodation under the FHA, or Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act (§ 504).

172.     Providing an accommodation to Plaintiff, so that she may live with her two Service Animals in her home, would not (1) result in substantial physical damage to the property of others; (2) pose an undue financial and administrative burden; or (3) fundamentally alter the nature of Defendant Medina SPCA's operations.

173.     As a result of the conduct or actions of Defendants, Plaintiff suffered damages and is an aggrieved person within the meaning of 42 U.S.C. § 3602(i).

174.     As a direct and proximate cause and consequence of Defendants' unlawful conduct as described above, Plaintiffs have suffered injuries in an amount to be proven at trial and are entitled to declaratory and injunctive relief.

### SIXTH CAUSE OF ACTION
### Violations of the Fair Housing Act
### Coercion Intimidation, Threats, and Interference

175.     Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

176.     Under the Fair Housing Act, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed … any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

177.     The invasion of Plaintiff's home and the interference with her right to have Service Animals for her disability is particularly invasive.

178.     Defendants intimidated, threatened and interfered with Plaintiff's rights under the FHA.

179.    Defendants discriminatory actions as set forth above were intentional, willful, and taken in reckless disregard for the rights of Plaintiff.

180.    As a direct and proximate cause and consequence of Defendants' unlawful conduct as described above, Plaintiffs have suffered injuries in an amount to be proven at trial and are entitled to declaratory and injunctive relief.

### SEVENTH CAUSE OF ACTION
### Violations of the Fair Housing Act
### Seizure of Defendant's Service Animals

181.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

182.    The seizure of Plaintiff's Service Animals without a pre-seizure hearing violates the FHA.

183.    To the extent that there were no exigent circumstances, Defendants use of police power to force a surrender of the Service Animals violates the FHA.

184.    Defendants had an obligation to provide Plaintiff with a pre-seizure hearing before removing her Service Animals from her home.

185.    The seizure of the Service Animals directly violates the FHA.

186.    Whatever justification existed from removal of the Service Animals cannot trump the FHA.

187.    State law, polices, customs, or procedures that interfere with, or are contrary to, the laws of congress, are invalid.

188.    In enacting the FHA, Congress's main purpose was to provide disabled persons like Plaintiff, with equal use and enjoyment of their home.

189.    The FHA preempts any state laws, policies, customs or procedures which Defendants may rely upon as justification for their seizure of the Service Animals and justification for refusing to return the Service Animals to her.

190.    Defendants actions related to her Service Animals stands as an obstacle to the objection of Congress in enacting the FHA, and are preempted by the FHA.

191.    Defendants violated the FHA by discriminating against Plaintiff by seizing, and also failing, to return the Service Animals as requested.

192.    Defendants violated the FHA by discriminating against Plaintiff failing to provide her with a pre-seizure hearing.

193.    Defendants violated the FHA by discriminating against Plaintiff by failing to provide a prompt post-seizure hearing.

194.    Defendants' acts, including those through its agents, as described above constitute refusal to make accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

195.    Defendants' acts, including those through its agents, as described above discriminated against Plaintiff in the terms, conditions or privileges of a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2).

196.    As a direct and proximate cause and consequence of Defendants' unlawful conduct as described above, Plaintiffs have suffered injuries in an amount to be proven at trial and are entitled to declaratory and injunctive relief.

**EIGHTH CAUSE OF ACTION**
*Monell* **(Governmental Liability)**

197.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

198.    Defendants have violated Plaintiffs' constitutional rights based on policy and custom as stated above, and defective training, pursuant to the doctrines set forth in *Monell v Dept. of Soc. Serv.,* 436 U.S. 658 (1978) and progeny, as the moving force behind the constitutional injuries stated in the preceding causes of action.

199.    Defendants' actions were taken under color of law, violating clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by them. +

200.    Defendants have a policy, pattern, practice and/or custom that encourages Defendant Medina SPCA's employees or  agents to conduct warrantless non-consensual entries onto peoples' properties.

201.    Defendants have a policy, pattern, practice and/or custom that encourages Defendant Medina SPCA's employees or agents to force persons to surrender their property by threats and coercion.

202.    Defendants have a policy, pattern, practice and/or custom that fails to provide pre-seizure, and post-seizure hearings.

203.    Defendants have a policy, pattern, practice and/or custom that discriminates against disabled persons who possess Service Animals.

204.    The policy, pattern, practice and/or custom of Medina SPCA, the final decision maker for which were Defendants Tracy Miller and Rachel Batten, was the affirmative link and motivating force behind the actions of Defendants Tracy Miller and Rachel Batten, which deprived Plaintiff of her civil rights under color of law and deprived her of her rights under the ADA and FHA.

205.    Therefore, Defendant Medina SPCA is separately liable to Plaintiff for damages arising out of the unreasonable and illegal search of her home and the unconstitutional seizure of her property, and arising out of the seizing and deprivation related to her Service Animals.

206.    Having deliberately violated the Plaintiff's constitutionally protected rights and rights under the ADA and FHA, and concomitantly having caused the Plaintiff to sustain damages as a result thereof, Defendants are liable to the Plaintiff, and the Plaintiff is entitled to recover the amount of damages sustained, declaratory, and injunctive relief, the costs of bringing this suit and reasonable attorneys' fees against Defendants pursuant to 28 U.S.C. Sections 2201 and 2202, and 42 U.S.C. Section 1983.

## STATE CAUSES OF ACTION

## NINTH CAUSE OF ACTION
### REPLEVIN

207.    Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

208.    Plaintiff owns the animals which were seized by Defendants.

209.    Defendants took possession of Plaintiff's animals without consent.

210.    Plaintiff requested return of her animals.

211.    Defendants have failed to return Plaintiff's property.

212.    Plaintiff has been damaged as a result of Defendants' seizure and retention of her animals.

## TENTH CAUSE OF ACTION
### CONVERSION

213. Plaintiff incorporates by reference all other paragraphs of this Complaint and Jury Demand as if fully set forth herein.

214. Plaintiff owns the dogs and cats which Defendants seized from her home.

215. Defendants converted her property as a result of their wrongful acts of seizing the animals, and because of the disposition of some of the animals seized.

216. Plaintiff has been damaged as a result of Defendants' conversion of her property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   Accept jurisdiction over this action;

B.   Enter a Declaratory Judgment (28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983) as follows,

1. finding that the foregoing actions of Defendants violate the federal Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.,* 24 C.F.R §100, *et seq.;*
2. declaring that the practices of Defendants as set forth above, are discriminatory and violate the Fair Housing Act;
3. finding the actions of Defendants unconstitutional under the Fourth and Fourteenth Amendment for failing to provide a pre-seizure hearing where there are not exigent circumstances, and otherwise failing to provide a prompt post-seizure hearing;
4. finding the actions of Defendants in seizing her animals to be violative of the Constitution.
5. finding that Defendants' actions were willful and wanton and in reckless disregard of Plaintiffs' civil rights under law.

C.   Award Injunctive relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983 as follows,

1. Order Defendants to immediately release and return to Plaintiff her Service Animals, Rajah and Zuni.
2. Order Defendants to return the veterinarian records that were seized;
3. Order Defendants to release and return to Plaintiff the dogs and cats they seized.
4. Enjoin Defendants from seizing and detaining any animals without providing the owner with a pre-seizure hearing in situations where it is feasible to do so;
5. Enjoin Defendants from seizing and detaining any animals without providing it with a prompt post-seizure hearing in situations where it is not feasible to hold a pre-seizure hearing;

6.  Enjoin Defendants from retaining possession of impounded dogs unless and until they provide a prompt post seizure pre-judgment hearing before a neutral judicial or administrative officer;

7.  Enjoin Defendants from refusing to release dogs whose owners qualify for a reasonable accommodation based under the ADA and FHA.

8.  Enjoin Defendants from refusing to reasonably accommodate a disabled persons request vis-à-vis their Service Animal.

9.  Enjoin Defendants from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to enjoy living in Medina County, Ohio.

10. Order Defendants to grant Plaintiff's requested accommodation;

11. Order Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiff to the position she would have been in but for the discriminatory conduct; and

12. Order Defendants to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of such conduct.

13. Order Defendants to adopt a reasonable accommodation policy that complies with the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 et seq.

D.      Award actual damages to Plaintiff in an amount to be determined by the jury and that would fully compensate for her out-of-pocket expenses and damages for intangible injuries including embarrassment, humiliation, and emotional distress caused by the conduct of the Defendants alleged herein, per the federal Fair Housing Act, 42 U.S.C. § 3613 (c)(1).

E.      Award punitive damages to Plaintiffs in an amount to be determined by the jury that would punish the Defendants for the willful, wanton and reckless conduct alleged herein and that would effectively deter similar conduct in the future, per the federal Fair Housing Act;

F.      Award general, special, actual, and punitive damages for Defendants' violations of Plaintiff's constitutional rights.

G.      For veterinary expenses which may be needed for the animals seized as a result of Defendants' acts;

H.      For future medical expenses pertaining to Plaintiffs' treatment for emotional distress as a result of Defendants' acts;

I.      For reasonable attorney's fees and other litigation-related costs as allowed by law under

42 U.S.C. § 1988, or, in the alternative, statutory attorney's fees;

J.      For costs of suit;

K.      For post judgment interest at the highest rate permitted by law;

L.      For such other and further relief as the Court may deem just and proper.


**JURY DEMAND:  PLAINTIFF REQUESTS A JURY TRIAL ON ALL MATTERS SO
TRIABLE**

Dated: February 27, 2023

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
*(pro hac vice)*
545 E. Jericho Turnpike
Huntington Station, NY 11746
(631) 629-8111 (telephone)
richard@thedoglawyer.com

*/s/ Michela Huth*
MICHELA HUTH (Reg. No. 0091353)
PO Box 17
Bolivar, OH 44612
330-440-4027 (telephone)
michelahuth.esq@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2023 a copy of the foregoing Verified Complaint was

emailed to Defendants' attorneys, Jeffrey Holland and Dana Marie Panella, by email at

jjholland@hmlawohio.com and dpannella@hmlawohio.com


/s/ Michela Huth

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury that the foregoing Complaint is true and accurate to the best of my knowledge.

Executed on February 27, 2023

KAY LACKEY